REC'D JUN 1 8 2026

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

**MILTON DAVID RODRIGUEZ,**
Individually and as a person aggrieved by unconstitutional search and seizure;

**and**

**GAMAIRA RODRIGUEZ,**
Individually and as owner of the unlawfully searched residence,

**Plaintiffs,**

**v.**

**BERKS COUNTY ADULT PROBATION AND PAROLE DEPARTMENT,**
a governmental agency of Berks County, Pennsylvania;

**SUPERVISOR JOHN DOE #1,**
Chief/Top Supervisor, Berks County Adult Probation & Parole,
sued in his individual and official capacity;

**SUPERVISOR JOHN DOE #2,**
Field Supervisor, Berks County Adult Probation & Parole,
sued in his individual and official capacity;

**PROBATION OFFICER TYLER MAN MILLER,**
Probation/Parole Officer, Berks County Adult Probation & Parole,
sued in his individual and official capacity;

**JOHN DOE AGENTS #3 THROUGH #8,**
Probation/Parole Agents, Berks County Adult Probation & Parole,
sued in their individual and official capacities;

**JOHN DOE POLICE OFFICERS #9 AND #10,**

1

Police Officers whose agency affiliation is presently unknown,
sued in their individual and official capacities;


**and**


**BERKS COUNTY, PENNSYLVANIA,**
a municipal government entity,


**Defendants.**

Civil Action No.: _____


## CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983
## JURY TRIAL DEMANDED


## PRELIMINARY STATEMENT

This is a civil rights action of profound constitutional significance. On November 15, 2025, in the City of West Reading, Berks County, Pennsylvania, agents of the Berks County Adult Probation and Parole Department — numbering six (6) probation and parole agents, two (2) supervisors, and two (2) police officers, for a combined force of ten (10) government actors — descended upon the private residence of Plaintiff Milton David Rodriguez and his wife, Gamaira Rodriguez, who owns the home, and conducted a warrantless, suspicionless, and constitutionally impermissible search of their home. The agents seized all of Plaintiff's lawfully possessed Pennsylvania Medical Marijuana Program medication and associated paraphernalia — property that Plaintiff possessed with full legal authority, pursuant to a valid Commonwealth of

2

Pennsylvania medical marijuana certification — leaving him to suffer without his prescribed medicine.

This was not a search born of legitimate law enforcement concern. There was no crime. There was no credible information suggesting a violation of any condition of probation. There was no warrant. There was no consent — indeed, both Plaintiffs expressly objected to the search. There was no reasonable suspicion of any unlawful activity whatsoever. What there was, however, was a probation officer who the day before, on November 13, 2025, questioned Plaintiff about the smell of marijuana — knowing full well, because the Department itself held a copy of Plaintiff's medical marijuana card in its own files — that Plaintiff was a lawfully registered Pennsylvania Medical Marijuana patient. And what followed was a punitive, retaliatory, and constitutionally offensive mobilization of state power against a citizen for the sole purpose of harassment and vindictive interference with his lawful private conduct.

The unlawful nature of the search and seizure was judicially confirmed by the Honorable Justin D. Bodor, Judge of the Court of Common Pleas of Berks County, Pennsylvania, who, on January 16, 2026, in Docket No. CP-06-CR-3490-2022, ordered the Berks County Adult Probation and Parole Department to immediately return all of Plaintiff's seized medical marijuana and associated paraphernalia. A sitting Pennsylvania judge ordered back what should never have been taken.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to redress the deprivation of their clearly established constitutional rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, and seek compensatory and punitive damages, declaratory relief, injunctive relief, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

3

1. This Court has original jurisdiction over Plaintiffs' federal constitutional claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction), as this action arises under the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

2. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as all Defendants reside or are located within this District, and all events and omissions giving rise to Plaintiffs' claims occurred within this District, specifically in Berks County, Pennsylvania.

3. This Court has authority to award declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and the Federal Rules of Civil Procedure, Rule 57.

4. This Court has authority to award attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), the Civil Rights Attorney's Fees Awards Act of 1976.

## PARTIES

### Plaintiffs

5. Plaintiff MILTON DAVID RODRIGUEZ is, and at all times relevant to this Complaint was, an adult individual residing at 310 Franklin Street, West Reading, Pennsylvania 19611, in the County of Berks, Commonwealth of Pennsylvania. Plaintiff Rodriguez was born on September 1, 1972. At all times relevant hereto, Plaintiff Rodriguez was a registered participant in the Pennsylvania Medical Marijuana Program, holding a valid Commonwealth-issued medical marijuana certification, and was serving a term of adult probation supervised by the Berks County Adult Probation and Parole Department.

6. Plaintiff GAMAIRA RODRIGUEZ is, and at all times relevant to this Complaint was, an adult individual residing at 310 Franklin Street, West Reading, Pennsylvania 19611. Mrs.

4

Rodriguez is the legal owner of the subject residence at 310 Franklin Street, West Reading, Pennsylvania 19611. She is the lawfully wedded wife of Plaintiff Milton David Rodriguez. At all times relevant hereto, Mrs. Rodriguez had a full, reasonable, and protected expectation of privacy in her home, which was unlawfully invaded by Defendants without her consent, and over her express objection.

**Defendants**

7.Defendant BERKS COUNTY ADULT PROBATION AND PAROLE DEPARTMENT (hereinafter "BCAPP" or "the Department") is, and at all times relevant to this Complaint was, a governmental department and agency of Berks County, Pennsylvania, responsible for the administration, supervision, and oversight of adult probationers and parolees in Berks County. The Department is an arm of the County and operates under color of state law. The Department, through the policies, customs, and practices of its supervisory personnel, is responsible for the constitutional violations alleged herein. The Department is sued under the doctrine of municipal liability established in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

8.Defendant BERKS COUNTY, PENNSYLVANIA (hereinafter "Berks County" or "the County") is a county government and political subdivision of the Commonwealth of Pennsylvania. As the governmental entity that funds, oversees, and controls the Berks County Adult Probation and Parole Department, and that employs the individual Defendants, Berks County bears direct liability for the unconstitutional policies, practices, and customs of the Department, including its failure to adequately train and supervise its agents. Berks County is sued under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

5

9. Defendant SUPERVISOR JOHN DOE #1 ("Chief Supervisor") is, upon information and belief, the Chief and/or Top Supervisor of the Berks County Adult Probation and Parole Department. In that capacity, Defendant Chief Supervisor held final policy-making authority over the Department's operations, including the authorization and direction of searches of probationers' residences. Defendant Chief Supervisor was personally present at the subject unconstitutional search of Plaintiffs' residence on November 15, 2025, and authorized, directed, and/or ratified the search. Defendant Chief Supervisor is sued in both his individual and official capacities. His true name is presently unknown to Plaintiffs; Plaintiffs will amend this Complaint to state his true name upon ascertaining the same through discovery.

10. Defendant SUPERVISOR JOHN DOE #2 ("Field Supervisor") is, upon information and belief, a field-level supervisor of the Berks County Adult Probation and Parole Department. It was this Defendant who, on November 13, 2025, when Plaintiff Milton David Rodriguez appeared at the probation office and requested early removal of his house arrest monitoring device, refused that request and informed Plaintiff that agents would visit his home on Saturday, November 15, 2025, to remove the device. This same supervisory Defendant, upon information and belief, participated in the planning and/or authorization of the retaliatory search that occurred on that date. Defendant Field Supervisor is sued in both his individual and official capacities. His true name is presently unknown to Plaintiffs and will be supplied upon the completion of discovery.

11. Defendant PROBATION OFFICER TYLER MAN MILLER (hereinafter "Officer Miller") is, and at all times relevant hereto was, a duly employed adult probation and parole officer of Berks County Adult Probation and Parole Department, serving as Plaintiff Milton

6

David Rodriguez's assigned probation officer. On November 13, 2025, during Plaintiff's visit to the probation office, Officer Miller confronted Plaintiff about the odor of marijuana — despite having in his possession, in the Department's own files, a copy of Plaintiff's valid Pennsylvania Medical Marijuana Program certification — thereby establishing the pretext that was then used to justify the retaliatory search. Officer Miller is sued in both his individual and official capacities.

12. Defendants JOHN DOE AGENTS #3 THROUGH #8 are, upon information and belief, probation and/or parole agents employed by the Berks County Adult Probation and Parole Department who participated in the unlawful search of Plaintiffs' residence on November 15, 2025. Their true names are presently unknown to Plaintiffs, who will amend this Complaint to state their true names upon obtaining the same through discovery. Each of these Defendants is sued in both his or her individual and official capacities.

13. Defendants JOHN DOE POLICE OFFICERS #9 AND #10 are, upon information and belief, sworn law enforcement officers of one or more municipal or state police agencies who were present at Plaintiffs' residence on November 15, 2025, in their official capacity as law enforcement, and who participated in and/or facilitated the unconstitutional search by their presence and by physically monitoring and restraining Plaintiff Rodriguez. Their agency affiliation and true names are presently unknown to Plaintiffs, who will amend this Complaint to state their true names and agency upon obtaining the same through discovery. Each of these Defendants is sued in both his individual and official capacity.

14.At all times relevant to this Complaint, all individual Defendants were acting under color of state law, to wit: under color of the statutes, ordinances, regulations, customs, and usages of the Commonwealth of Pennsylvania and/or the County of Berks.

## STATEMENT OF FACTS

### A. Plaintiff Milton David Rodriguez's Probationary Status and Medical Marijuana Authorization

15.At all times relevant to this Complaint, Plaintiff Milton David Rodriguez was serving a term of adult probation in the Court of Common Pleas of Berks County, Pennsylvania, Docket No. CP-06-CR-3490-2022, under the supervision of the Berks County Adult Probation and Parole Department.

16.At all times relevant to this Complaint, Plaintiff Milton David Rodriguez was a lawfully registered patient in the Pennsylvania Medical Marijuana Program, holding a valid Commonwealth of Pennsylvania medical marijuana patient certification, issued in full compliance with the Pennsylvania Medical Marijuana Act, 35 P.S. § 10231.101 et seq.

17.In accordance with the rules and requirements of his supervision, Plaintiff Rodriguez had previously provided the Berks County Adult Probation and Parole Department with a photocopy of his valid Pennsylvania Medical Marijuana Program patient certification card. This document was retained in Plaintiff's official probation file maintained by the Department.

18.Plaintiff was NOT enrolled in, ordered into, or subject to any specialized Drug Court, DUI Court, treatment court, or any court-ordered drug treatment program as a condition of his probation. He was serving a standard term of adult probation. Accordingly, no blanket prohibition on the lawful use of medical marijuana applied to Plaintiff's supervision.

8

19. The Supreme Court of Pennsylvania has unequivocally held that judges and probation officers may not categorically prohibit probationers from using lawfully obtained and possessed medical marijuana, absent specific individualized findings. See Gass v. 52nd Judicial District, Lebanon County, __ Pa. __, __ A.3d __ (Pa. 2020). This is the settled law of the Commonwealth, binding upon all probation officers and supervisors as a matter of law.

20. Further, the Pennsylvania Medical Marijuana Act itself confers express immunity from prosecution, penalty, and the denial of any right or privilege to registered patients for lawful use of medical marijuana. 35 P.S. § 10231.2103(a). A probationer's constitutional and statutory rights do not cease to exist because he is serving a term of probation, particularly with respect to conduct that the legislature has expressly immunized.

**B. The Events of November 13, 2025: The Confrontation and the Pretext**

21. On Thursday, November 13, 2025, Plaintiff Milton David Rodriguez appeared in person at the offices of the Berks County Adult Probation and Parole Department in Reading, Pennsylvania, for a scheduled visit with his assigned probation officer, Defendant Tyler Man Miller.

22. During that visit, Plaintiff raised a reasonable and legitimate request with the Department: he asked that his court-ordered house arrest electronic monitoring device be removed from his ankle on that day, November 13, 2025. The basis for this request was entirely reasonable — the sentencing judge's house arrest order was set to expire on Saturday, November 15, 2025, and the Berks County Adult Probation and Parole Department would be closed on that Saturday, making removal of the device logistically impossible without either a Friday or Thursday visit.

9

23. Defendant Field Supervisor John Doe #2, upon information and belief, refused Plaintiff's request. He advised Plaintiff that agents from the Department would come to Plaintiff's home on Saturday, November 15, 2025, to remove the monitoring device. This instruction placed Plaintiff on notice that probation agents would be visiting his home on November 15, 2025, solely for the limited administrative purpose of monitoring device removal.

24. During that same visit on November 13, 2025, Defendant Tyler Man Miller confronted Plaintiff Milton David Rodriguez with a pointed and accusatory question: "Why do you smell like marijuana?"

25. Plaintiff Rodriguez immediately and unequivocally reminded Defendant Miller — and the Department — that he held a valid Pennsylvania Medical Marijuana Program patient certification card, and that a copy of that very certification was on file in his probation record with the Department.

26. This single interaction — the confrontation about the odor of lawful medical marijuana, followed by Plaintiff's clear and documented lawful justification — formed the entire universe of the Defendants' predicate for the search that followed two days later. At that moment, whatever question Defendant Miller believed he was investigating was answered: Plaintiff Rodriguez smelled of marijuana because he is a lawfully authorized Pennsylvania medical marijuana patient. Period.

27. No reasonable probation officer, having received that response and knowing that the file confirmed Plaintiff's legal status as a medical marijuana patient, would have any legitimate grounds to treat that fact as evidence of a probation violation or as justification for a residential search. Nevertheless, the Defendants chose to weaponize this

10

information — or more precisely, to use the absence of any violation as an opportunity for institutional retaliation.

**C. The Events of November 15, 2025: The Unconstitutional Search and Seizure**

28. On Saturday, November 15, 2025, Plaintiff Milton David Rodriguez and his wife, Plaintiff Gamaira Rodriguez, the homeowner, were present at their residence, 310 Franklin Street, West Reading, Pennsylvania 19611. They were lawfully in their home, watching television, going about their private lives. They were expecting probation agents to visit for the limited administrative purpose of removing Plaintiff's house arrest monitoring device.

29. What appeared at the door was not a routine administrative visit. Instead, the Defendants descended upon Plaintiffs' home in force — a staggering array of ten (10) government actors: six (6) probation and parole agents, including Defendant Tyler Man Miller; two (2) supervisors, including Defendant Chief Supervisor John Doe #1; and two (2) police officers, Defendants John Doe Police Officers #9 and #10. This is not the profile of an ankle bracelet removal; this is the profile of a raid.

30. Upon Plaintiff Rodriguez opening the door, the Defendants barged into the private residence of Plaintiffs. They did not seek or obtain consent to enter. They announced that there was "an investigation" and that the house would have to be searched.

31. No search warrant was produced. No warrant existed. No exigent circumstances existed. No probable cause existed. No reasonable suspicion existed that Plaintiff had violated any condition of his probation or committed any crime.

32. Plaintiff Gamaira Rodriguez, as the owner of the home and a person with full Fourth Amendment rights, expressly and clearly objected to the search of her home. Her objection was ignored, overridden, and trampled upon by the Defendants.

33. Plaintiff Milton David Rodriguez also objected to the search and to the seizure of his property. His objection was similarly disregarded.

34. The two (2) police officer Defendants, John Doe Police Officers #9 and #10, were present in Plaintiffs' home during the search, physically monitoring Plaintiff Rodriguez and thereby enabling and facilitating the unconstitutional search through their official law enforcement presence.

35. In the course of the search, the Defendants located and proceeded to seize and confiscate the following items belonging to Plaintiff Milton David Rodriguez, all of which constituted entirely lawful property:

(a)    Three (3) Pennsylvania Medical Marijuana Program containers containing duly prescribed and dispensed medical marijuana;

(b) Two (2) marijuana grinders;

(c) Twelve (12) boxes of OCB bamboo smoking cones; and

(d) One (1) digital scale.

36. Each and every one of these items was legally possessed by Plaintiff Rodriguez. The medical marijuana was obtained from a licensed Pennsylvania dispensary pursuant to his valid patient certification. The paraphernalia associated with the use of medical marijuana is protected under Pennsylvania law. None of these items constituted contraband. None of these items constituted evidence of a crime. None of these items constituted evidence of a

12

probation violation. They were confiscated for no legitimate law enforcement purpose — they were confiscated as an act of institutional spite.

37. As a direct result of the Defendants' unlawful seizure of his prescribed medical marijuana, Plaintiff Rodriguez was deprived of his medication — medication he requires to treat his clinical depression, anxiety disorder, serious psychological conditions, and chronic physical pain and ailments. He repeatedly and expressly informed the Defendants that he needed the marijuana to treat his medical conditions. This plea was ignored. Without his prescribed medicine, Plaintiff Rodriguez was forced to endure his medical conditions in their full, unmitigated severity, experiencing the darkness of untreated depression, the paralysis of untreated anxiety, and the suffering of unmanaged physical pain — all inflicted upon him by people who had no legal authority to take his medicine in the first place.

38. The search of Plaintiffs' home lasted an extended period of time, during which both Plaintiffs were subjected to the humiliation, anxiety, fear, distress, and constitutional indignity of having their private home ransacked by ten government officials without lawful authority.

39. No criminal charges were filed against Plaintiff Rodriguez as a result of the search. No probation violation charges were filed against Plaintiff Rodriguez as a result of the search. No court found that anything seized from Plaintiffs' home was contraband, evidence of a crime, or evidence of a probation violation. The search yielded absolutely nothing — because there was nothing to find — because Plaintiff Rodriguez had done nothing wrong.

40. The constitutional and psychological injuries inflicted upon Plaintiffs did not end when the Defendants departed their home on November 15, 2025. They continue to this day.

Plaintiff Milton David Rodriguez, a person who already lived with pre-existing clinical depression, anxiety disorder, and other serious psychological conditions, now experiences persistent and debilitating paranoia as a direct consequence of the unconstitutional search. The government's forcible, warrantless invasion of his home — without legal authority, without warning beyond a pretextual monitoring removal visit, without any basis in law or fact — has left him unable to feel safe and secure in his own residence. The place that every person is constitutionally guaranteed as their ultimate sanctuary has been, for Plaintiff Rodriguez, transformed into a source of dread. He experiences hypervigilance, an inability to relax in his own home, intrusive recollections of the invasion, and an unshakable fear that the Defendants or others acting under the same institutional customs may again descend upon his family's home without justification. These are not abstract harms. They are the real, lived, daily psychological consequences of what Defendants did. Plaintiff Gamaira Rodriguez, the owner of the invaded home, similarly suffers the ongoing emotional aftermath of having her home — her property, her domain — violated by government actors who brushed aside her constitutionally protected objection as if it were meaningless.

## D. Judicial Vindication: The Return of Property Order

40. Following the unlawful search and seizure, Plaintiff Milton David Rodriguez, represented by counsel Jay M. Nigrini, Esquire (Attorney ID No. 85729), filed a Petition for Return of Property in the Court of Common Pleas of Berks County, Pennsylvania, captioned Commonwealth of Pennsylvania v. Milton David Rodriguez, Docket No. CP-06-CR-3490-2022, on or about December 15, 2025.

14

41. On January 16, 2026, the Honorable Justin D. Bodor, Judge of the Court of Common Pleas of Berks County, Pennsylvania, entered an Order directing the Berks County Adult Probation and Parole Department to immediately return to Plaintiff Rodriguez all of the medical marijuana and associated paraphernalia that had been seized from his residence on November 15, 2025.

42. The Department complied with Judge Bodor's Order, and Plaintiff's property was returned to him shortly after the entry of the Order.

43. Judge Bodor's Order constitutes a judicial determination that Plaintiff Rodriguez's property was not contraband; that its seizure was not authorized; and that the Defendants had no legal basis for retaining it. This Order stands as definitive judicial confirmation of the unlawfulness of the Defendants' conduct.

**E. The Unconstitutional Policy, Custom, and Failure to Train**

44. The conduct of the Defendants on November 15, 2025, was not an isolated act of individual rogue officers. It was the product of an institutional culture, policy, and/or custom within the Berks County Adult Probation and Parole Department that permits, condones, and encourages its supervisors and agents to conduct warrantless, suspicionless searches of probationers' residences as a tool of intimidation, control, and retaliation, without regard for the constitutional rights of those under supervision or the rights of homeowners who are not themselves on probation.

45. The mobilization of ten (10) government actors for what was announced as a house arrest monitoring device removal — and the immediate pivot to a full residential search — demonstrates that the search was pre-planned, pre-authorized, and carried out pursuant to a supervisory decision, not an impromptu field determination. The Chief Supervisor's

15

personal presence at the scene further confirms that this search was an institutional action, authorized from the highest levels of the Department's supervisory hierarchy.

46. The Berks County Adult Probation and Parole Department has failed to adequately train its probation officers and supervisors regarding: (a) the constitutional limitations on the search of a probationer's residence, including the reasonable suspicion requirement established by United States v. Knights, 534 U.S. 112 (2001); (b) the rights of third-party homeowners who are not themselves on probation, including the rule of Georgia v. Randolph, 547 U.S. 103 (2006), and Fernandez v. California, 571 U.S. 292 (2014); (c) the Pennsylvania Medical Marijuana Act, 35 P.S. § 10231.101 et seq., including the prohibition on penalizing registered patients for lawful use; (d) the Pennsylvania Supreme Court's ruling in Gass v. 52nd Judicial District, Lebanon County; and (e) the constitutional prohibition on retaliatory and punitive conduct by probation officers acting under color of state law.

47. This failure to train amounts to deliberate indifference to the obvious risk that probation officers and supervisors, absent proper training, will violate the constitutional rights of those they supervise — and those with whom supervisees reside. City of Canton, Ohio v. Harris, 489 U.S. 378 (1989).

## CAUSES OF ACTION

### COUNT I: Violation of the Fourth Amendment to the United States Constitution — Unreasonable Search of Residence

(42 U.S.C. § 1983 — Against All Individual Defendants)

48. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

16

49. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV.

50. The sanctity of the home is the central, most inviolable value protected by the Fourth Amendment. "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961). The Supreme Court has consistently held that searches of the home without a warrant are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980).

51. While a probationer's Fourth Amendment rights may be subject to certain reduced protections as a condition of supervision, those rights are not eliminated. The Supreme Court held in United States v. Knights, 534 U.S. 112, 121 (2001), that even where a probation search condition exists, a search of a probationer's home by law enforcement officers requires, at minimum, reasonable suspicion that the probationer has violated the law or a condition of his probation. The Knights standard requires specific, articulable facts giving rise to a reasonable suspicion of wrongdoing — not a hunch, not a pretext, and certainly not a preordained decision to search made the day before the search occurred.

52. Here, no reasonable suspicion existed. The only "fact" available to the Defendants was that Plaintiff Rodriguez smelled of marijuana — a fact that was immediately, definitively, and completely explained by his lawful and documented status as a certified Pennsylvania Medical Marijuana Program patient. A person who lawfully uses medical marijuana, whose legal authorization is on file with his probation department, cannot create

17

reasonable suspicion of a probation violation merely by using his lawfully prescribed medication. That is not reasonable suspicion — that is using the form of a probation search to punish lawful, constitutionally protected activity.

53. Moreover, the home searched was owned by Plaintiff Gamaira Rodriguez, who is not on probation, has never been on probation, and who possesses the full Fourth Amendment rights of any private citizen. Mrs. Rodriguez's Fourth Amendment rights are not diminished or overridden by her husband's probationary status. The Defendants had absolutely no basis — not probable cause, not reasonable suspicion, not a warrant, not exigent circumstances — to search her home without her consent. She refused consent. Her refusal was legally valid, constitutionally binding, and entitled to full protection under the Fourth Amendment.

54. The Supreme Court held in Georgia v. Randolph, 547 U.S. 103 (2006), that a warrantless search of a shared home is unreasonable and invalid as to a co-tenant who is present and objects, even if a co-tenant consents. Mrs. Rodriguez, the owner of the home and a co-resident, was present and expressly objected. Her objection had legal force. See also Illinois v. Rodriguez, 497 U.S. 177 (1990). Regardless of any arguable consent or reduced expectation of privacy attributable to Plaintiff Rodriguez as a probationer, Plaintiff Gamaira Rodriguez's fully retained Fourth Amendment rights were independently and grossly violated.

55. The manner of the search — deploying ten (10) agents and officers without warrant, without consent, without suspicion, and without any legitimate law enforcement purpose — itself constituted an unreasonable use of state power that the Fourth Amendment was designed to prohibit.

18

56. As a direct and proximate result of Defendants' unconstitutional search, Plaintiffs suffered violations of their Fourth Amendment rights, loss of property, physical suffering from deprivation of prescribed medication, extreme emotional distress, humiliation, fear, anxiety, and loss of the security and sanctity of their home.

## COUNT II: Violation of the Fourth Amendment — Unlawful Seizure of Property
(42 U.S.C. § 1983 — Against All Individual Defendants)

57. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

58. The Fourth Amendment prohibits not only unreasonable searches but also unreasonable seizures of property. The seizure of property is unreasonable where the government lacks probable cause, a warrant, or a specific legal justification for the confiscation. See United States v. Place, 462 U.S. 696, 701 (1983).

59. Defendants seized from Plaintiff Rodriguez: three (3) containers of prescribed Pennsylvania Medical Marijuana Program medication; two (2) marijuana grinders; twelve (12) boxes of OCB bamboo smoking cones; and one (1) digital scale. Every item was lawfully owned and lawfully possessed by Plaintiff Rodriguez pursuant to his valid medical marijuana certification and Pennsylvania law. None of the items were contraband. None constituted evidence of any crime or probation violation.

60. The seizure of Plaintiff's lawfully possessed medical marijuana was categorically impermissible. Under the Pennsylvania Medical Marijuana Act, 35 P.S. § 10231.2103(a), a registered patient shall not be arrested, prosecuted, or penalized in any manner, or denied any right or privilege, solely for the lawful use, possession, or transport of medical

marijuana in accordance with the Act. Defendants' seizure of Plaintiff's medical marijuana constituted precisely the type of prohibited penalization that the Act expressly forbids.

61. The Supreme Court of Pennsylvania's ruling in Gass v. 52nd Judicial District, Lebanon County, further confirms that probation officers lack authority to prohibit or penalize a probationer's lawful use of medical marijuana absent specific, individualized judicial findings. No such finding was ever made with respect to Plaintiff Rodriguez.

62. Judge Bodor's January 16, 2026 Order of Return is the judicial system's definitive pronouncement that this seizure was wrongful from its inception. The property never should have been taken. It was taken as an act of institutional retaliation, and the Court of Common Pleas ordered it back.

63. As a direct and proximate result of Defendants' unlawful seizure, Plaintiff Rodriguez was deprived of his lawfully owned property, was deprived of his prescribed medication for an extended period, and suffered physically, emotionally, and financially as a result.

## COUNT III: Violation of the Fourteenth Amendment — Deprivation of Property and Liberty Without Due Process of Law
(42 U.S.C. § 1983 — Against All Individual Defendants and Berks County)

64. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

65. The Fourteenth Amendment to the United States Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

20

66. Plaintiff Rodriguez had a protected property interest in his lawfully possessed medical marijuana and associated paraphernalia. Plaintiff Gamaira Rodriguez had a protected property interest in the security and sanctity of her home. Plaintiff Rodriguez had a protected liberty interest in his ability to use his lawfully prescribed medical marijuana to treat his medical conditions.

67. Defendants deprived Plaintiffs of these protected property and liberty interests through arbitrary, capricious, and irrational governmental action — a suspicionless, warrantless, pretextual search and seizure — without affording Plaintiffs any pre-deprivation process or any meaningful post-deprivation remedy through the Defendants' own administrative procedures.

68. Plaintiff Rodriguez was compelled to resort to a separate judicial proceeding — the filing of a Petition for Return of Property — to recover property that never should have been seized. The fact that he had to petition a court to recover undeniably lawful property from his own government constitutes a textbook deprivation of property without due process.

69. The Substantive Due Process Clause of the Fourteenth Amendment protects individuals from governmental action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). The deployment of ten government officers to conduct a warrantless, suspicionless search of a private home, seizure of lawful medication from a sick man, and disregard of the express objections of the homeowner, shocks the conscience and violates the substantive guarantees of the Fourteenth Amendment's Due Process Clause.

**COUNT IV: Retaliatory and Vindictive Search in Violation of the First and Fourth Amendments**

21

(42 U.S.C. § 1983 — Against Defendants Miller, John Doe #1, John Doe #2, and All Supervisory Defendants)

70. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

71. A government official may not conduct a search, seizure, or other adverse action against an individual as retaliation for conduct that is constitutionally protected or otherwise lawful. See Hartman v. Moore, 547 U.S. 250, 256 (2006); Lozman v. City of Riviera Beach, 585 U.S. 87 (2018). A retaliatory search conducted without independent reasonable suspicion is unconstitutional, even where the officers could theoretically have conducted the search on different grounds. See United States v. Scott, 450 F.3d 863 (9th Cir. 2006); cf. Nieves v. Bartlett, 587 U.S. 391 (2019).

72. The chronology of events in this case is itself the evidence of retaliation and vindictiveness. On November 13, 2025, Plaintiff exercised his lawful right to use his prescribed medical marijuana, and to assert that right to his probation officer. That same day, he also sought the reasonable accommodation of early removal of his monitoring device — a request denied by Defendants. Two days later, the Department mobilized ten officials — including its top supervisor — and arrived not merely to perform the administrative task of monitor removal, but to conduct a comprehensive search of Plaintiff's home.

73. The transformation of a monitoring device removal visit into a ten-officer raid, occurring immediately after Plaintiff asserted his legal rights to his probation officer, is direct circumstantial evidence — indeed, compelling evidence — that the search was motivated by retaliation rather than any legitimate law enforcement or probation supervision purpose.

22

74. A retaliatory search violates the Fourth Amendment's requirement of reasonableness, because an improper retaliatory motive taints the entire enterprise and renders the search per se unreasonable. An act of government retaliation in the form of a search is simultaneously a Fourth Amendment violation and an affront to the liberty protections of the Fourteenth Amendment.

75. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiffs suffered all of the damages described herein.

## COUNT V: Municipal Liability — Unconstitutional Policy, Custom, and Failure to Train
(42 U.S.C. § 1983 — Against Berks County and Berks County Adult Probation and Parole Department)

76. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

77. Under Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978), a municipality or governmental entity may be held liable under 42 U.S.C. § 1983 where the unconstitutional action was taken pursuant to an official policy, a widespread custom or practice, a decision by a final policymaker, or a failure to train that amounts to deliberate indifference to constitutional rights.

78. The Berks County Adult Probation and Parole Department and Berks County are liable under Monell on multiple independent grounds:

(a) Final Policymaker Authorization: Defendant Chief Supervisor John Doe #1 was the highest supervisory official in the Department and, as such, was a final policymaker for the Department. His personal authorization and participation in the November 15, 2025

23

search constitutes official County policy under Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), and his decisions in that role are directly attributable to Berks County.

(b) Custom and Practice: The Department has maintained an institutional custom of using the authority to search probationers' residences as a tool of control and retaliation, without adequate constitutional guardrails, reflecting a deliberate indifference to the Fourth Amendment rights of those it supervises and the rights of innocent homeowners.

(c) Failure to Train: The Department and County have failed to adequately train their probation officers and supervisors on: (i) the reasonable suspicion standard required for probation searches under United States v. Knights, 534 U.S. 112 (2001); (ii) the rights of non-probationer homeowners and the consent requirements of Georgia v. Randolph, 547 U.S. 103 (2006); (iii) the Pennsylvania Medical Marijuana Act, 35 P.S. § 10231.101 et seq., and the Gass ruling; and (iv) the constitutional prohibition on retaliatory searches. This failure to train represents deliberate indifference to the rights of persons who come into contact with the Department. City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989).

79. The failure to train was a moving force behind the constitutional violations suffered by Plaintiffs. Had the Defendants been properly trained on even the most basic constitutional requirements for probation searches, the November 15, 2025 search would not — could not — have occurred.

80. Berks County and the Department are liable for the constitutional injuries caused to Plaintiffs by the implementation of their unconstitutional policies, customs, and practices.

## COUNT VI: Supervisory Liability

(42 U.S.C. § 1983 — Against Defendants John Doe #1 and John Doe #2)

24

81. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

82. A supervisory official may be held liable under § 1983 where: (1) the supervisor established and maintained a policy, practice, or custom that directly caused the constitutional harm; (2) the supervisor personally participated in the constitutional violation; or (3) the supervisor, with deliberate indifference, directed his subordinates in a manner that resulted in the constitutional violation, or acquiesced in the pattern of unconstitutional conduct. See Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), rev'd on other grounds, 575 U.S. 822 (2015); Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

83. Defendant Chief Supervisor John Doe #1 was personally present at the unconstitutional search, authorized it, directed it, and ratified the conduct of all agents present. His personal participation in the violation is direct and irrefutable.

84. Defendant Field Supervisor John Doe #2 initiated the chain of events by refusing Plaintiff's legitimate request and setting up the pretext visit of November 15, 2025, and, upon information and belief, participated in the authorization and planning of the retaliatory search.

85. Both supervisory Defendants are directly liable for the constitutional violations established herein.

**ARGUMENT AGAINST QUALIFIED IMMUNITY**

**WHY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

25

Plaintiffs anticipate that the individual Defendants will seek the protection of qualified immunity. This argument must fail, and this Court should deny qualified immunity to all individual Defendants for the following reasons:

## A. The Legal Standard for Qualified Immunity

86. Qualified immunity shields government officials from civil liability only where their conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has emphasized that the right must be clearly established at a sufficient level of specificity — not merely at a high level of abstraction — such that every reasonable official would understand that what he is doing violates that right. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011); Mullenix v. Luna, 577 U.S. 7, 12 (2015).

87. Qualified immunity is not a get-out-of-jail-free card for unconstitutional misconduct. It protects honest mistakes of law in close cases — not deliberate invasions of well-settled constitutional rights. Ziglar v. Abbasi, 582 U.S. 120, 152 (2017).

## B. The Rights Violated Were Clearly Established

88. Each of the constitutional rights violated here was clearly established well before November 15, 2025:

(i) The Fourth Amendment right to be free from warrantless searches of the home absent a recognized exception has been clearly established law since at least Payton v. New York, 445 U.S. 573 (1980) — over 45 years ago.

(ii) The requirement of at least reasonable suspicion before searching a probationer's residence has been clearly established since United States v. Knights, 534 U.S. 112 (2001) — over 20 years ago.

26

(iii) The right of a co-resident homeowner, present and objecting, to refuse consent to a search has been clearly established since Georgia v. Randolph, 547 U.S. 103 (2006) — nearly 20 years ago.

(iv) The right to be free from retaliatory government searches has been recognized in this Circuit and others for decades. See Hartman v. Moore, 547 U.S. 250 (2006); Lozman v. City of Riviera Beach, 585 U.S. 87 (2018).

(v) Under the Pennsylvania Medical Marijuana Act, the unlawfulness of penalizing a registered patient for lawful use has been expressly stated by the legislature since 2016. 35 P.S. § 10231.2103(a). The Gass decision in 2020 made this application to probationers unequivocal.

89. No reasonable probation officer could have believed that organizing a ten-person search party to raid the home of a legally authorized medical marijuana user — with no suspicion of any actual probation violation, with the homeowner present and objecting — was constitutionally permissible. The law was not merely clearly established; it was beyond dispute. There is no arguable justification for what Defendants did. Qualified immunity should be denied.

## C. The Personal Participation of Supervisors Bars Immunity

90. Qualified immunity is an individual inquiry. Defendant Chief Supervisor John Doe #1 was not a bystander — he was personally present, directing the operation. His physical participation in an unconstitutional search forecloses any claim of immunity. An official who personally participates in a constitutional violation cannot claim he did not know he was violating the law. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

## D. Summary Judgment on Immunity Grounds Should Be Denied

27

91. Because the constitutional rights at issue were clearly established as a matter of law, and because the factual record — including the state court's Order requiring return of the property — demonstrates that no reasonable officer could have believed this search was lawful, summary judgment on qualified immunity grounds would be improper. The inquiry of whether a reasonable officer could have believed his conduct was lawful is an objective one that considers the totality of the circumstances. Taking the allegations of the Complaint as true — as this Court must at the pleading stage — qualified immunity cannot be resolved as a matter of law in Defendants' favor. Scott v. Harris, 550 U.S. 372, 380 (2007); Tolan v. Cotton, 572 U.S. 650, 657 (2014).

## DAMAGES

92. As a direct and proximate result of the acts and omissions of all Defendants, acting under color of state law, Plaintiffs Milton David Rodriguez and Gamaira Rodriguez have suffered, and continue to suffer, the following damages:

**Compensatory Damages**

(a) Physical suffering, bodily pain, and acute medical distress resulting from Plaintiff Rodriguez's forced deprivation of his lawfully prescribed medical marijuana medication. Plaintiff Rodriguez suffers from clinical depression, anxiety disorder, and other serious psychological and physical health conditions for which his medical marijuana was prescribed and medically necessary. The Defendants' forcible seizure of his medicine left him without treatment for those conditions, causing him to endure the full, unmedicated weight of his depression, anxiety, and physical pain during the period of deprivation — a period of suffering that was entirely the product of Defendants' unlawful conduct and

entirely preventable. Plaintiffs seek compensatory damages for this category of harm in an amount no less than Fifteen Thousand Dollars ($15,000.00);

(b) Severe and ongoing emotional distress, psychological anguish, and post-traumatic manifestations caused by the forcible, warrantless, ten-officer invasion of Plaintiffs' private home. The violent disruption of Plaintiffs' place of safety and refuge — their own home — by an overwhelming and intimidating government force, acting without legal authority and over Plaintiffs' express objections, has inflicted upon Plaintiff Rodriguez a profound and persistent sense of paranoia, hypervigilance, and psychological insecurity in his own residence that continues to this day. Where once his home was a place of peace, it has been rendered, by Defendants' unconstitutional intrusion, a source of anxiety and dread. Plaintiff Rodriguez lives with the lasting psychological scar of having had his home violated, his property seized, and his dignity stripped away by the very government officials charged with his supervision. The psychological and emotional harm inflicted upon him is real, measurable, and ongoing. Plaintiff Gamaira Rodriguez, as the owner of the invaded home, likewise continues to suffer the emotional distress, fear, and loss of security occasioned by this unlawful invasion of her property. Plaintiffs seek compensatory damages for emotional distress, psychological suffering, and ongoing paranoia in an amount no less than One Hundred Fifty Thousand Dollars ($150,000.00);

(c) The reasonable costs of mental health treatment, therapy, and counseling reasonably required for Plaintiff Rodriguez to address the aggravation and exacerbation of his pre-existing depression, anxiety, and psychological conditions caused by Defendants' conduct, as well as the costs of any medical care necessitated by the forced interruption of his prescribed medical marijuana treatment. Plaintiffs seek compensatory damages for

medical and mental health treatment costs in an amount no less than Ten Thousand Dollars ($10,000.00);

(d) Loss of the security, sanctity, and inviolability of Plaintiffs' home — a loss that is not merely economic but constitutional and dignitary in nature, representing the destruction of the one place in which the law has always promised every person the right to be left alone;

(e) The value of the personal property unlawfully seized by Defendants, including the fair market value of Plaintiff's confiscated medical marijuana, medical paraphernalia, and associated items, together with the replacement cost of said property, in an amount no less than Five Thousand Dollars ($5,000.00);

(f) The costs, expenses, and attorney's fees associated with the filing and prosecution of the Petition for Return of Property in the Court of Common Pleas of Berks County, including fees paid to counsel Jay M. Nigrini, Esquire (Attorney ID No. 85729), in an amount to be established at trial;

(g) Loss of enjoyment of life, loss of the ability to safely and comfortably occupy his own home, and loss of the constitutional right of every person to live free from arbitrary, punitive, and vindictive governmental intrusion, all in an amount no less than Twenty Thousand Dollars ($20,000.00); and

(h) Such other and further compensatory damages as may be established at trial, with total compensatory damages sought in an amount no less than Two Hundred Thousand Dollars ($200,000.00).

**Punitive Damages**

93. Plaintiffs are entitled to an award of punitive damages against the individual Defendants in their individual capacities. The conduct of the individual Defendants was not the product of confusion or mistake — it was deliberate, willful, malicious, and wantonly indifferent to Plaintiffs' clearly established constitutional rights. The assembly of ten government officers to conduct a vindictive search of a sick man's home — a man whose prescribed medication exists to manage his clinical depression, anxiety disorder, and serious physical health conditions — seizing that very medicine and leaving him to suffer without it, is precisely the type of egregious, oppressive, and conscience-shocking abuse of government power that punitive damages are designed to condemn, punish, and deter. The message this Court must send is unmistakable: probation officers are not above the Constitution, and a badge does not license vindictiveness. Smith v. Wade, 461 U.S. 30, 56 (1983) (punitive damages available under § 1983 where defendant's conduct is motivated by evil motive or intent, or involves reckless or callous indifference to the federally protected rights of others). Plaintiffs seek punitive damages in an amount no less than Three Hundred Fifty Thousand Dollars ($350,000.00) against the individual Defendants, to be apportioned by the jury in accordance with each Defendant's degree of culpability and personal participation in the unconstitutional conduct.

**Declaratory and Injunctive Relief**

94. Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the Defendants' conduct as described herein violated the Fourth and Fourteenth Amendments to the United States Constitution.

95. Plaintiffs also seek injunctive relief requiring the Berks County Adult Probation and Parole Department and Berks County, Pennsylvania, to:

31

(a) Implement and enforce written policies governing the circumstances under which probation searches of residences may be conducted, consistent with the requirements of the Fourth Amendment and United States v. Knights, 534 U.S. 112 (2001);

(b) Implement and enforce written policies recognizing and protecting the rights of non-probationer homeowners, consistent with Georgia v. Randolph, 547 U.S. 103 (2006);

(c) Implement and enforce written policies recognizing the rights of registered Pennsylvania Medical Marijuana Program patients under the Medical Marijuana Act and Gass v. 52nd Judicial District;

(d) Provide mandatory training to all probation officers and supervisors on the foregoing constitutional and statutory requirements; and

(e) Establish an effective internal grievance and review mechanism for reporting and addressing alleged constitutional violations by probation officers.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs MILTON DAVID RODRIGUEZ and GAMAIRA RODRIGUEZ respectfully request that this Honorable Court enter judgment in their favor and against all Defendants, jointly and severally where applicable, and grant the following relief:

1. A declaration that the acts and omissions of Defendants described herein violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution;

2. Compensatory damages in an amount no less than Two Hundred Thousand Dollars ($200,000.00), representing compensation for Plaintiff Rodriguez's physical pain and suffering; his clinical depression, anxiety disorder, and other psychological conditions aggravated and exacerbated by the forcible deprivation of his prescribed medication; the

ongoing paranoia, hypervigilance, and psychological distress inflicted upon both Plaintiffs by the unconstitutional invasion of their home; the value of seized property; the cost of medical and mental health treatment; loss of enjoyment of life; and all other compensatory damages sustained by Plaintiffs as a direct and proximate result of Defendants' unconstitutional conduct;

3. Punitive damages against the individual Defendants in their individual capacities in an amount no less than Three Hundred Fifty Thousand Dollars ($350,000.00), to punish and deter the willful, malicious, and wantonly indifferent conduct described herein, including the deliberate seizure of a mentally ill patient's prescribed medication as an act of institutional retaliation;

4. Injunctive relief requiring Berks County and the Berks County Adult Probation and Parole Department to reform their policies, practices, and training programs as described herein;

5. Attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), the Civil Rights Attorney's Fees Awards Act of 1976, should Plaintiffs obtain the assistance of counsel at any point in this litigation;

6. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

7. Such other and further relief as this Honorable Court deems just, equitable, and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable, pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure.

33

Respectfully submitted,


**Milton David Rodriguez**
Plaintiff, Pro Se
310 Franklin Street
West Reading, Pennsylvania 19611


**Gamaira Rodriguez**
Plaintiff, Pro Se
310 Franklin Street
West Reading, Pennsylvania 19611


Date: 6/18/2026

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: OF BERKS COUNTY,
: PENNSYLVANIA
:
v. :
: Docket No.: CP-06-CR-3490-2022
MILTON DAVID RODRIGUEZ :
     Petitioner : BODOR, J.

## PETITION FOR RETURN OF PROPERTY

TO THE HONORABLE, JUSTIN D. BODOR, THE JUDGE OF THE SAID COURT:

Petitioner, Milton David Rodriguez, by and through his counsel, Jay M. Nigrini, Esquire, pursuant to Rule 588, Pa.R.Crim.P., hereby respectfully requests that this Honorable Court order that the property seized from him be returned and respectfully represents the following:

1. That Petitioner, Milton David Rodriguez, is an adult individual currently residing at 310 Franklin Street, West Reading, Pennsylvania 19611.

2. That on November 15, 2025, Ed Keglovits and Adam Bechtel of the Berks County Adult Probation and Parole Department seized three (3) medical marijuana containers with prescribed medical marijuana, two (2) grinders, twelve (12) boxes OCB bamboo cones and a digital scale from Petitioner's residence during a home visit.

3. That on January 29, 2025, Petitioner was sentenced to a period of five (5) years of supervision by the Honorable Judge James M. Lillis for Driving Under the Influence of a Controlled Substance-2nd Offense.

4. That the items taken from Petitioner are still in the possession of the Commonwealth, namely the Berks County Adult Probation and Parole Department.

5. That the items taken by probation from Petitioner rightfully belong to Petitioner, are not contraband, and are not derived from nor in any way connected with criminal activity.

6.  That the items seized are not necessary to any pending criminal investigations or prosecutions.

WHEREFORE, Petitioner, Milton David Rodriguez, respectfully requests this Court to Order that the property seized be returned to him.

Respectfully submitted,

Date: *12-15-25*

JAY M. NIGRINI, ESQUIRE
Attorney I.D. #85729
Sodomsky & Nigrini, Attorneys at Law
606 Court Street, Suite 400
Reading, PA 19601
610.375.0412
Attorneys for Petitioner

COMMONWEALTH OF PENNSYLVANIA

v.

MILTON DAVID RODRIGUEZ
Petitioner

IN THE COURT OF COMMON PLEAS
OF BERKS COUNTY,
PENNSYLVANIA

Docket No.: CP-06-CR-3490-2022

BODOR, J.

## VERIFICATION

I, Jay M. Nigrini, Esquire, hereby verify that the information contained within the foregoing document is true and correct to the best of my knowledge or information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. Section 4904 relating to unsworn falsification to authorities.

## CERTIFICATE OF COMPLIANCE

I, Jay M. Nigrini, Esquire, hereby certify this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

12-15-25
_____
DATE

_____
JAY M. NIGRINI, ESQUIRE

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                                : OF BERKS COUNTY,
                                                : PENNSYLVANIA
                                                :

               v.                                      : Docket No.: CP-06-CR-3490-2022
                                                :

MILTON DAVID RODRIGUEZ
              Petitioner                             : BODOR, J.

## O R D E R

AND NOW, this __16th__ day of __January__, 2026, upon consideration of

Petitioner's Petition for Return of Property, it is hereby ORDERED and DECREED that the

Berks County Adult Probation and Parole Department shall immediately return to Petitioner his

medical marijuana and associated paraphernalia seized on November 15, 2025.

BY THE COURT:

BODOR, J.

BERKS COUNTY, PA
2025 DEC 22 PM 1:07
CLERK OF COURTS

BERKS COUNTY, PA
2025 JAN 20 PM 3:09
CLERK OF COURTS

Berks County Clerk of Courts Received 12/15/2025 12:02 PM
Berks County Clerk of Courts Filed 12/15/2025 12:02 PM

COMMONWEALTH OF PENNSYLVANIA　:　IN THE COURT OF COMMON PLEAS
　　　　　　　　　　　　　　　　　:　OF BERKS COUNTY, PENNSYLVANIA
　　　v.　　　　　　　　　　　　:　CRIMINAL DIVISION
　　　　　　　　　　　　　　　　　:
MILTON DAVID RODRIGUEZ,　　　　:　CP-06-CR-3490-2022
　　　Defendant　　　　　　　　　:　JUDGE BODOR

## ORDER

AND NOW, TO WIT, this __10th__ day of __December__, 202_5_, upon

motion of Jay M. Nigrini, Esquire, Attorney for the Defendant, and upon consideration of the

foregoing Petition for Return of Property, a hearing to determine the merits of the motion shall

be held on the __5th__ day __January__, 202_6_ at __2:45__ a.m./p.m.

By the Court,

## Justin D. Bodor, J.

_____
JUSTIN D. BODOR, J.